# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Case No. 4:08cr183.1 |
| | § | (Judge Crone) |
| GUSTAVO AGUIRRE | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is the Motion for Identity Hearing. After the District Court referred the matter to this Court for a report and recommendation, the Court conducted an evidentiary hearing on April 22 and 23, 2009, to determine whether Defendant is a minor. Defendant was represented by Robert Herrington. The Government was represented by Stevan Buys.

### BACKGROUND

Defendant Gustavo Aguirre was charged in a two-count indictment with conspiracy to transport and harbor illegal aliens and transport illegal aliens.[1] On December 3, 2008, Defendant appeared before U. S. Magistrate Judge Don D. Bush for his initial appearance and arraignment, and under oath he acknowledged himself to be the person named in the indictment. On February 3, 2009, Defendant appeared before Judge Bush to change his plea. Under oath, Defendant identified himself as Gustavo Aguirre. Defendant pleaded guilty to count one of the indictment charging a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), conspiracy to transport and harbor illegal aliens. On February 5, 2009, Judge Bush entered his findings of fact and recommendation on guilty plea. On the same day, the findings were adopted by United States District Judge Marcia A. Crone. On March 11, 2009, Defendant filed his motion for identity hearing asserting that he was a minor. The Court conducted an evidentiary

---

[1] The indictment alleges that on August 20, 2008, Defendant picked up a vehicle and then picked up a load of seventeen illegal aliens from a location in the Dallas, Texas area and proceeded to transport them to another location within the United States in exchange for payment. The vehicle used in conspiracy was a van.

hearing on April 22-23, 2009, to determine whether Defendant is a minor. On May 22, 2009, the Court heard additional argument from counsel and considered appointment of medical experts. On May 29, 2009, the Court appointed medical experts to evaluate the age of Defendant. The medical experts submitted reports to the Court explaining their findings. On July 6, 2009, the Court held an evidentiary hearing, during which time the medical experts provided testimony. On July 20, 2009, the Government filed its final brief. On July 31, 2009, Defendant filed his final brief.

**Evidence Presented**

At the hearing on April 22-23, 2009, the Defendant called the following witnesses: Julian Almanza, ("Almanza") with the General Consulate of Mexico, and Gustavo Aguirre. The Government called Patrick Simpson ("Simpson"), a Special Agent with Immigration and Customs Enforcement ("ICE"). At the July 6, 2009 hearing, Defendant called Dr. Robert Williams ("Williams") and Dr. Harrell Gill-King ("King"). The Government called Feliciana Chavez ("Chavez"), a Special Agent with ICE.

*Julian Almanza*

Almanza is employed by the General Consulate of Mexico and assigned to the Dallas, Texas office. He is assigned to the protection department where he gives advice to Mexican nationals including Mexican nationals detained in American jails. Almanza became involved in this case after receiving a telephone call from a woman claiming to be the mother of the Defendant. The woman stated that the Defendant was her son and his name was Francisco Javier Jimenez Rosales and he was a minor. Almanza never met Defendant until he spoke to him prior to the first Court hearing. Almanza testified that Defendant said that his name was Francisco Javier Jimenez Rosales. Defendant's Exhibit 1 was admitted into evidence as the birth certificate of Francisco Javier Jimenez

Rosales.[2] Almanza asked Defendant about Exhibit 1 including the name of his father, mother, and his grandparents. Defendant correctly answered Almanza's questions except for the last name of his grandparents. The birth certificate indicates that Francisco Javier Jimenez Rosales was born on December 4, 1991, making him seventeen.

Exhibit 3[3] was admitted into evidence. Exhibit 3 purports to be an identification document for Francisco Javier Jimenez Rosales. Almanza stated that the woman[4] who called him went to the municipality and requested the identification document. Exhibit 3 indicates that Francisco Javier Jimenez Rosales is seventeen. Almanza could not say whether the photograph attached to Exhibit 3 represented someone at seventeen. The family provided the photograph that is attached to create the identification document. Exhibit 5[5] was admitted into evidence. Exhibit 5 is a document from the national education system of Mexico for Francisco Javier Jimenez Rosales. This document was also supplied to Almanza by the woman who called him. It contains the same picture used in Exhibit 3. Exhibit 7 was admitted. Exhibit 7[6] purports to be a record from the education system in Mexico indicating that Francisco Javier Jimenez Rosales was in the fifth grade in the 2004-2005 school year.

---

[2] Defendant's Exhibit 1 is in Spanish and Exhibit 2 is an English translation of Exhibit 1.

[3] Defendant's Exhibit 3 was created on February 19, 2009. Defendant's Exhibit 4 is the English translation of Exhibit 3.

[4] Exhibits 3 and 4 identify the woman requesting the identification document as Salustia Rosales Castillo.

[5] Defendant's Exhibit 5 was created on May 25, 2007. Exhibit 6 is an English translation of Exhibit 5.

[6] Exhibit 8 is the English translation of Exhibit 7. Exhibit 7 was created on January 30, 2008.

Almanza stated that Exhibits 1, 3, 5 and 7 are copies of original documents[7] provided to him by the woman claiming to be the mother of Francisco Javier Jimenez Rosales. Almanza stated that there is no central bureau or agency in Mexico from which a person could obtain an official birth certificate and that only a family member could obtain birth documentation. He described the woman as being desperate in her request for help. She informed Almanza that her son gave a false name when he was arrested and that she first learned about the situation when she received a letter from her son. Almanza spoke to her on the telephone approximately six times and never met her. Exhibits 3, 5, and 7 all contain the same photograph. Almanza could not say where the photograph came from, and he could not explain why the same photograph was the same on all three documents.

Almanza testified that Defendant informed him that he gave a different name during his arrest because he was afraid. During cross-examination, the Government offered Government Exhibit E which purports to be another identification document for Francisco Javier Jimenez Rosales at age fourteen. Almanza was asked to compare the pictures shown in Exhibit E and Exhibit 3, and he responded that he believed the pictures were of the same person. Almanza further stated he does not believe the Mexican driver's license[8] to be an official document issued by Mexico. Almanza also testified that Defendant does not speak like someone raised in the Nuevo Leon area of Mexico and that his vocabulary is like someone seventeen years of age.

*Gustavo Aguirre*

Defendant testified that his name was Francisco Javier Jimenez Rosales, he was only seventeen

---

[7] Defendant's Exhibits 9, 10, 11 and 12 were admitted into evidence and are the original Mexican documents supplied by the woman claiming to be the mother of Francisco Javier Jimenez Rosales. Copies of theses documents were admitted into evidence as Exhibits 1, 3, 5 and 7.

[8] Government Exhibit A contains a color copy of the Mexican driver's license as well as the citation issued to Defendant by Hopkins County Sheriff's Department.

years old at the time of the identity hearing, and that he was a citizen of Mexico. His nickname in Mexico is Cabanas, but his family calls him Javier. Defendant stated that his birth date is December 4, 1991. He identified the picture on Exhibits 3, 5 and 7 as a picture of him taken at some point in school. When he was first arrested by local officials, he gave the name of Gustavo Aguirre because the officer asked for his license and that was the name on the license. Defendant obtained the Mexican driver's license from an unidentified man and said that he never used the name of Gustavo Aguirre until he was given the license for the purpose of driving the vehicle as alleged in the indictment. Defendant had agreed to drive the vehicle to New York because he needed the money and stated that he did not know where the name Gustavo Aguirre came from. The date of birth contained on the driver's license is December 4, 1986, a date not provided by Defendant.

When Defendant appeared in federal court, he continued to use the name of Gustavo Aguirre. Defendant admitted that he lied when he identified himself as Gustavo Aguirre but continued to do so because he was afraid.

Defendant wrote a letter to his mother in Mexico informing her of his arrest and where he was located. He informed her that he was okay. He testified that he wrote to his mother under the name of Gustavo Aguirre. He did not sign the letter but placed the name Javier in the letter. He stated that his mother's name is Salustia Rosales Castillo.

Defendant testified that he believed that he has been in the United States for about three to four years. After coming to the United States, he lived in Phoenix, Arizona with his brother. He worked in landscaping.

When Defendant was arrested in Hopkins County in August 2008, he was given a citation by

the Hopkins County Sheriff's Department.[9] Defendant presented the fake Mexican driver's license, containing the name Gustavo Aguirre, to authorities when he was arrested. While in jail, Defendant received two letters from a girl with whom he was communicating. The envelopes for these letters were addressed to "Gustavo Aguirre."[10]

Defendant testified that when he appeared in federal court, he was under oath and swore that he was Gustavo Aguirre, the person named in the indictment. He signed all of the documents in federal court under the name of Gustavo Aguirre. He was able to communicate directly with his attorney, who was fluent in Spanish. Prior to his counsel being contacted by the Mexican consulate, Defendant never told his counsel that he was only seventeen and that his name was not Gustavo Aguirre. He also never told his state-court attorney that he was only seventeen or that his name was not Gustavo Aguirre. Defendant admitted to signing all of the Hopkins County documents under the name of Gustavo Aguirre.

*Patrick Simpson*

Simpson is a Special Agent with ICE assigned to the Dallas, Texas office and Defendant's case. His responsibilities are to enforce U. S. immigration and customs laws. Simpson first met Defendant during an interview at Hopkins County jail conducted on September 4, 2008. At the interview, Defendant identified himself as Gustavo Aguirre and gave his date of birth as December 4, 1986, which matched the information on the driver's license. Simpson described Defendant's mood during the interview as fairly calm and not nervous. During the interview, Defendant asked for an attorney. Defendant told Simpson that he was born in Nuevo Leon, Monterey. Defendant indicated

---

[9] Government's Exhibit A was admitted and contains Defendant's Mexican driver's license and the citation from Hopkins County Sheriff's Department.

[10] Government's Exhibits C1 and C2 are envelopes and the letters received by Defendant.

that he had been in the United States for approximately six years. Simpson also described Defendant's demeanor at his initial appearance and arraignment as not nervous.

Simpson testified that ICE uses all methods to avoid detaining juveniles including contacting family members or the consulate of the home country. Simpson described ICE's policy towards juveniles as one where juveniles are not prosecuted. Simpson said it is common for individuals arrested to immediately inform ICE that they are juveniles in order to quicken their release.

The Court admitted Government Exhibits B-1 to B-7.[11] Government Exhibit B-1 is the Hopkins County plea agreement which names the Defendant as Gustavo Aguirre. The documents details Defendant's guilty plea. Government Exhibit B-2 is the Hopkins County Magistrate warning which identifies the Defendant as Gustavo Aguirre. Government Exhibit B-3 is an additional Hopkins County Magistrate warning that identifies the Defendant as Gustavo Aguirre. Government Exhibit B-4 is Defendant's application for counsel in Hopkins County in the name of Gustavo Aguirre. Government Exhibit B-5 is a second application for counsel in Hopkins County in the name of Gustavo Aguirre. Government Exhibit B-6 is an indictment for possession of a controlled substance from Hopkins County dated August 20, 2008. Government Exhibit B-7 is another Magistrate warning in Hopkins County dated October 24, 2008, which identifies the Defendant as Gustavo Aguirre.

Simpson testified that Defendant was stopped on a routine traffic stop and he presented the Mexican license, Government's Exhibit A, resulting in a citation for not having an American driver's license. After conducting a search, officers found cocaine in Defendant's possession and he was arrested and taken to the Hopkins County jail where he was housed in the adult section of the jail. Defendant always identified himself as Gustavo Aguirre and never indicated to ICE or Hopkins County

---

[11] The exhibits were offered during the testimony of Simpson.

officials that he was a juvenile.

Simpson testified about Government Exhibit D which depicts an array of photographs. The first photograph is the picture of Defendant from the Mexican driver's license and the second photograph is Defendant's Hopkins County book-in picture. The other two pictures are the same photograph and represent the same photograph from Government Exhibit E. Simpson testified in his opinion that Exhibit D represents pictures of two different individuals. Simpson also testified that in his opinion, the photographs contained in Defendant's exhibits are different than the picture contained in Exhibits D and E. During cross-examination, Simpson stated that he believes Defendant is in his mid-twenties.

*Dr. Robert G. Williams*

Williams is a practicing general dentist and a forensic odontologist. He was appointed to assist in the determination of the age of Defendant. His first report was issued on June 4, 2009[12] and a second report which elaborated on his findings was issued on June 8, 2009.[13] Williams bases his findings on the molar development method. This determination is made from the development of the third molar, or wisdom tooth, because it gives an indication as to the final aging of an individual. X-rays were taken of Defendant's mouth. In this case, Defendant only had two wisdom teeth. Williams prefers four wisdom teeth when conducting an age evaluation. Williams stated that his analysis is just an estimate of an age range, but he believes that the technique is reliable.

In his June 4, 2009 report, Williams determined that Defendant's age range was 15.33 years to 21.87 years. In his update on June 8, 2009, Williams found that his age range was 19 years to 21.5

---

[12] The June 4, 2009 report was admitted as Joint Exhibit 1.

[13] The June 8, 2009 letter was admitted as Joint Exhibit 2.

8

years. He testified that he could not eliminate the possibility that, based upon the ranges, Defendant was only seventeen. Williams explained that the differences in the two reports happened because in preparing his second report, he took into consideration all of the other studies that have been done with regard to developmental age and age range estimation. Williams' opinion is that Defendant is over eighteen years old and that, based on all his charts, he believes that Defendant is approximately nineteen years old.

*Harrell Gill-King, Ph.D., D-ABFA*

King is a professor of pathology and human identification at the University of North Texas Science Center and Director of the Laboratory of Forensic Anthropology. He was named as an expert to assist in the determination of the age of Defendant. King examined Defendant and reviewed x-rays of Defendant. On June 4, 2009, King issued his report.[14] In this case, King reviewed x-rays of Defendant's hands and wrists, the rim of his pelvis, and his pubic bones where they meet in the middle of his pelvis.

After reviewing all of the data, King stated his opinion that Defendant is somewhere between eighteen and twenty-two years old. He estimates with 94.45 percent certainty that Defendant falls within this age range. King's best estimate as to Defendant's age is twenty and a half.

*Feliciana Chavez*

Chavez works as a Special Agent with ICE. Chavez compared the photographs on Government Exhibit D and described the differences between the photographs. His opinion is that two different people are represented in the pictures.

---

[14] The June 4, 2009 report was admitted as Joint Exhibit 3.

# ANALYSIS

**Legal Standard**

There are not many cases that address the relative burdens when the issue of defendant's age is raised. After remand from the Eighth Circuit Court of Appeals, the District Court, in *United States v. Salgado-Ocampo*, 50 F. Supp.2d 908, 909 (D. Minn. 1999), set out the burdens as follows:

> The initial burden of proving defendant's age falls on the government, which must offer prima facie evidence of defendant's adult status. If the government satisfies this burden, defendant must then come forward with evidence of his juvenile status. If the defendant comes forward with such evidence, the government has an opportunity to rebut with any additional information.

*Salgado-Ocampo*, 50 F. Supp.2d at 909; *see United States v. Alvarez-Porras*, 643 F.2d 54, 66-67 (2nd Cir.1981); *see also United States v. Ceja-Prado*, 333 F.3d 1046 (case remanded for evidentiary hearing to determine true age of Defendant); *United States v. Garcia-Flores*, 925 F.2d 1471 (table), 1991 WL 17448 (9th Cir. 1991); *State v. Sandomingo*, 39 Wash.App. 709, 695 P.2d 592, 594 (1985). After receiving the evidence, the Court must determine from a preponderance of the evidence the date on which defendant was born. *Salgado-Ocampo*, 50 F. Supp.2d at 909*; Garcia-Flores*, 1991 WL 17448 at *3.

*Government's Prima Facie Burden*

The Court is faced with the question of whether the Defendant, who represented himself as Gustavo Aguirre at his initial appearance, arraignment, and change of plea is in fact a minor. Defendant now claims to be Francisco Javier Jimenez Rosales, with a birth date of December 4, 1991, making him only seventeen years of age at the time of the offense. The Court notes that it is impossible to determine with any certainty the Defendant's true date of birth.

The government bears the initial burden of proving defendant's age. The government must offer prima facie evidence of defendant's adult status. The Court finds that the government has offered

prima facie evidence that Defendant is an adult.

On August 20, 2008, when Defendant was first arrested by the Hopkins County Sheriff's Department, he represented himself as Gustavo Aguirre with a birth date of December 4, 1986. Defendant was cited for "no driver's license." Upon his arrest, Defendant presented a Mexican driver's license which indicated that his date of birth was December 4, 1986. Documents from Hopkins County indicate that Defendant entered a plea of guilty for the offense of "no driver's licence" under the name Gustavo Aguirre. Defendant was later indicted by the grand jury of Hopkins County for possession of cocaine. The county records also indicate that a hold was placed on Defendant by ICE. Defendant asked for court-appointed counsel under the name of Gustavo Aguirre. On October 24, 2008, Defendant appeared before a Hopkins County Magistrate after being indicted. Defendant again represented himself as Gustavo Aguirre. During all proceedings in state court, Defendant represented himself as Gustavo Aguirre. At no time during his state court proceedings did Defendant ever inform anyone that he was someone else or that he was only seventeen.

When Defendant was first approached by an ICE official, Defendant identified himself as Gustavo Aguirre and stated that his date of birth was December 4, 1986. When Defendant identified himself for the ICE agent, Defendant did not have his Mexican driver's license in front of him. Defendant also informed the agent that he was born in Nuevo Leon, Monterey, which matched the information contained on his driver's license.

Defendant testified that when he was brought into federal court on this case, he testified that he was born on December 4, 1986. Despite Defendant's testimony to the contrary, a review of the transcripts for his initial appearance and change of plea do not indicate that he was asked his date of birth or his age.

The Court finds that the Government has offered prima facie evidence that Defendant is not

a minor, but rather an adult.

*Defendant's Burden*

After the Government establishes a prima facie case, the burden shifts to Defendant to demonstrate by a preponderance of the evidence that he is a minor. The Court finds that Defendant has not established by a preponderance of the evidence that he is a minor. Defendant's argument hinges on whether Defendant is in fact Francisco Javier Jimenez Rosales.[15]

Throughout all of the proceedings, and until the motion for identity hearing was filed, Defendant has maintained that he is Gustavo Aguirre. At no time prior to the filing of the motion has Defendant asserted that he is a minor. In fact, Defendant represented to the state authorities that he was born on December 4, 1986. He likewise presented himself as Gustavo Aguirre to the ICE agent who first interviewed him. He told the ICE agent that he was born on December 4, 1986. Defendant further represented himself as Gustavo Aguirre at his initial appearance and arraignment and at his guilty plea.

Defendant now tells the Court that all of that was a lie and that he is actually Francisco Javier Jimenez Rosales and was born on December 4, 1991. His only explanation for lying is that he was afraid and did not know what would happen to him. Although that may be true, when he was first arrested by Hopkins County, it does not appear credible that Defendant would continue to lie and enter guilty pleas in state court and in federal court. Moreover, when he was interviewed by Simpson a few weeks after his arrest, Simpson testified that Defendant did not appear afraid or nervous. He stated that Defendant appeared calm during the interview and understood what was occurring by asking for an attorney. It seems reasonable that Defendant's fear would dissipate after his initial arrest and he

---

[15] Defendant's argument is that he is Francisco Javier Jimenez Rosales and that Mr. Jimenez is a minor.

would want to make authorities aware of his alleged true identity. Defendant was represented by counsel at his state court proceedings as well as his federal court proceedings. At no time did Defendant inform his attorneys of his age or alleged true identity. His attorney in this case, Mr. Herrington, is fluent in Spanish and had no difficulty communicating with Defendant. Defendant's behavior is inconsistent with what would be expected from a juvenile illegal alien incarcerated in the United States.

The Government argues that Defendant made inconsistent statements at the identity hearing with regard to his driver's license. The driver's license listed Defendant's name as Gustavo Aguirre and his date of birth as December 4, 1986. Defendant testified that the driver's license was created by a man he did not know on the day that he was arrested by Hopkins County officials. Defendant further testified that he provided no further information to the person who created the license. The Government argues that a comparison of the photograph from the driver's license and the book-in picture for the day of arrest indicate that the photograph was not taken the same day. The Government argues that this "indisputably shows that Aguirre lied about the timing of the creation of the driver's license." The Court agrees. The Court finds that Defendant's testimony at the identity hearing was not credible.

Defendant does present the Court with documents from Mexico for an individual named Francisco Javier Jimenez Rosales. Almanza testified that he was contacted by a woman who asserted that she was the mother of Francisco Javier Jimenez Rosales and that her son used the name Gustavo Aguirre when he was arrested in the United States. Almanza discussed the various Mexican documents including a birth certificate and Mexican identification document which were provided by Defendant's alleged mother to Almanza. Almanza never met her and only spoke to her on the telephone. Record-keeping in Mexico is different than in the United States. There is no "original"

birth certificate. Every time one is needed, a new one is prepared. There is not a central location for seeking official Mexican documents and only the family can request such documents. The Court questions the authenticity and credibility of the Mexican documents. No family member appeared in Court to identify Defendant as Francisco Javier Jimenez Rosales. Almanza never met Defendant until the hearing. The Court heard no testimony of anyone who knew Defendant and could identify him. The Court finds that the documents do not establish that Defendant is Francisco Javier Jimenez Rosales or that Defendant is a minor.

The Court finds that Defendant has failed to carry his burden of establishing that he was seventeen at the time of the offense. Based upon the credible evidence, the Court finds that Defendant is more likely than not to have been eighteen or older at the time of the offense. Defendant has failed to show that he was only seventeen or that he is Francisco Javier Jimenez Rosales.

In addition, the Court appointed two experts to assist the Court in making an age determination. Dr. Williams found that Defendant's age range was between 19 years to 21.5 years. Dr. Gill-King found that Defendant's age range was 18-22 years, with his best estimation of true age being 20.5 years old. Although Defendant agrees that Drs. Williams and Gill-King are experts in their fields, he asserts that the opinions are estimates and not an exact age determination. The Court acknowledges that the experts cannot establish the Defendant's precise age and can merely provide the Court with an age range estimation. Defendant has failed to refute this evidence or demonstrate how the testimony of the experts in any way supports his theory that he is a minor. When the Court examines this evidence with the remainder of the record, the Court still finds that Defendant has failed in meeting his burden of establishing that Defendant is a minor. The expert testimony only supports the Court's initial decision that Defendant is not a minor for purposes of federal law.

**RECOMMENDATION**

The Court recommends that the case proceed against Defendant as an adult and that 18 U.S.C. §§ 5031 *et seq.* does not apply to this case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 21st day of August, 2009.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE